Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jacob Scheibe

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB SCHEIBE, *on behalf of all those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> PROSUPPS USA, LLC, *a Texas limited liability company*, <br><br> Defendant. | No. **'22CV1784 BEN MSB** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Jacob Scheibe ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, hereby brings this action against ProSupps USA, LLC ("Defendant" or "ProSupps"), alleging that certain products manufactured, packaged, labeled, advertised, distributed and sold by Defendant are misbranded and falsely advertised in California and otherwise violate California law, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1.  Plaintiff Jacob Scheibe is and at all times relevant was a citizen of the state of California, domiciled in San Diego. On or about August 15, 2022, Scheibe purchased ProSupp's

Hydro BCAA powder ("the Products") from third-party retailer Amazon.com (Order No. #113-9662135-8861852).

2. Mr. Scheibe is a student who has recently sought to lose weight and add muscle mass, and to do so has begun to eat with intentionality and take dietary supplements. He carefully reviews labels, including the Products' labels, to track calories in order to maintain progress toward his weight loss goals.

3. Defendant ProSupps USA, LLC is a Texas limited liability company with its principal place of business in Plano, Texas. ProSupps' Products are dietary supplements that contain an amino acid blend that purportedly support endurance during workouts and aid in muscle repair. They are used to increase the efficiency of workouts, which supports increases in muscle mass and losing weight associated with fat.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

5. Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

6. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

7. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

8. In the alternative, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest, fees, and costs.

9. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

10. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

11. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

12. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

13. Plaintiff's losses and those of other Class members were sustained in this district.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

15. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

**A.  Deceptive Calories-Per-Serving Claims.**

16. Under FDA regulations, the "Total Calories" in a dietary supplement such as the Products "shall be declared when they are present in a dietary supplement in quantitative amounts by weight that exceed the amount that can be declared as zero," *i.e.*, they exceed five calories per serving. 21 C.F.R. § 101.36(b)(ii)(1).

17. These regulations do not permit manufacturers of dietary supplements to omit stating calories per serving if the total calories per serving exceeds five calories.

18. FDA guidance clarifies this requirement. FDA provides a clear (high resolution) example of labeling calories for an amino acid-based supplement at https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules:

**Supplement Facts**

Serving Size 1 Tablet
Servings Per Container 50

| Amount Per Tablet | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

*Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

19. In this example label, protein is not reported because there are no complete proteins. Nonetheless, the Total Calories attributable to individual amino acids are stated on the label.

20. FDA's guidance thus provides no safe harbor for supplement manufacturers to simply omit calories on the label of amino acid-based supplements if Total Calories exceed the amount that can be declared as zero, even if protein is not reported.

21. ProSupp's Hydro BCAA amino acid powder reports zero calories, as displayed below:

**Supplement Facts**

Serving Size: 1 Scoop (13.8g)
Servings Per Container: 30

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 0 | |
| Total Carbohydrate | 0g | 0% |
| Total Sugars | 0g | |
| Includes 0g Added Sugars | | |
| Sodium (as Sodium Citrate) | 50mg | 2% |
| Potassium (as Potassium Chloride) | 100mg | 2% |
| 2:1:1 BCAA Matrix | 7g | ** |
| L-Leucine | 3.5g | ** |
| L-Isoleucine | 1.75g | ** |
| L-Valine | 1.75g | ** |
| Full-Spectrum EAA Matrix | 3g | ** |
| L-Lysine, L-Threonine, L-Phenylalanine, L-Methionine, L-Histidine, L-Tryptophan | | |

*Percent Daily Values are based on a 2,000 calorie diet.
**Daily Value not Established.

Ingredients: Natural & Artificial ... Sucralose ... Silicon Dioxide,

22. Based on FDA guidance and consistent with the example label provided, the amino acid blend in the Products alone constitutes approximately 30 calories per serving. This estimate does not include the calories provided by other ingredients.

23. FDA regulations permit the use of one of "Five Methods" of determining the caloric content of foods. *See* 21 C.F.R. § 101.9(c)(i)(1). A "safe-harbor" provision allows the "total number of calories" measured by any of the Five Methods to be as much as 20% greater than the calorie content listed on a label. *Id.* § 101.9(g)(5).

24. Among the methods by which a manufacturer may determine caloric content is using bomb calorimetry. *See* 21 C.F.R. § 101.9(c)(i)(1).

25. The Products were tested using bomb calorimetry conducted by an independent third-party nutritional analysis firm. That testing confirmed that Product contains 5.02 kcal/g, or about 2,078 calories in the entire container, equating to 69 calories per serving.

26. Consumers would reasonably expect that a dietary supplement that reports zero calories per serving contains zero calories per serving. Here, the explicit representation that the Products contain zero calories per serving is false and deceptive.

27. In fact, under any of the FDA's relevant Five Methods, the Products are mislabelled.

28. Defendant's label deceives consumers, such as Plaintiff, by making deceptive representations regarding calorie content.

29. While the Products come in different flavors, each flavor is substantially similar to every other flavor in terms of the Product's formulation and amino acid blend. In addition, each flavor of the Products makes the same misrepresentation regarding calories per serving.

30. Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

31. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

32. Given the Defendant's labels, consumers including Plaintiff would reasonably understand Defendant's statements to mean that the Products had zero calories per serving as represented. These representations were false.

33. Consumers including Plaintiff viewed and reasonably relied on Defendant's statements on the Products' labels, as described herein, and would not have purchased the Products from Defendant if the truth about the Products were known, or would have only been

willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

34. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace

35. Consumers including Plaintiff especially rely on calories-per-serving label claims made by food product manufacturers such as ProSupps, as they cannot confirm or disprove those claims simply by viewing or even consuming the Product.

36. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons within the State of California who purchased the Products within four years prior to the filing of this Complaint.

38. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

39. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

40. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

41. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the State.

42. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products is misleading and deceptive;

   b. Whether a reasonable consumer would understand Defendant's calories-per-serving claims to indicate that the Products had zero calories per serving, and reasonably relied upon those representations;

   c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

   d. the proper amount of damages and disgorgement or restitution;

   e. the proper scope of injunctive relief; and

   f. the proper amount of attorneys' fees.

43. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

44. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

45. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

46. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

47. There are no defenses available to Defendant that are unique to the named Plaintiff.

48. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

49. Furthermore, Plaintiff has selected competent counsel who are experienced in class actions and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

50. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible

for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

51. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

52. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

53. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

54. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "UNFAIR" CONDUCT

55. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

56. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

57. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code § 17200, *et seq*.

58. Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose accurately the calories per serving in the Products.

59. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

60. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

61. Defendant publicly disseminated untrue or misleading representations regarding the calories per serving of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

62. Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code § 17200, *et seq*.

## COUNT 2
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.* — "FRAUDULENT" CONDUCT

63. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

64. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

65. Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code § 17200 *et seq*.

66. Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose accurately the calories per serving in the Products.

67. As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

68. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

69. Defendant publicly disseminated untrue or misleading representations regarding the calories per serving of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

70. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

# COUNT 3
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ*. — "UNLAWFUL" CONDUCT

71. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

72. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

73. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

74. Defendant's business practices, as alleged herein, are "unlawful" because it fails to disclose accurately the calories per serving in the Products.

75. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

76. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

77. Defendant publicly disseminated untrue or misleading representations regarding the calories per serving in its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

78. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *ET SEQ.***

79. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

80. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

81. Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

82. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

83. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

84. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

85. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**COUNT 5**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *ET SEQ.***

86. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87. Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

88. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

89. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

90. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the calories per serving representations that were made by Defendant on the labels and associated website and marketing materials of its Products.

91. Defendant's ongoing failure to provide material facts about its Products on its labels and associated advertising material violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

    b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

    c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

    d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

    e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

92. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

93. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

94. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

95. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

### COUNT 6
### UNJUST ENRICHMENT

96. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

97. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the calories per serving in the Products.

98. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

99. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

100. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

101. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

102. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

103. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**PRAYER FOR RELIEF**

104. WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the CLRA, UCL, and FAL;

c. Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein;

d. Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff pursuant to California Code of Civil Procedure section 1021.5 and the common-law private-attorney-general doctrine;

f.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.  Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED.

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

November 14, 2022