UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SCHEIBE, on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>PROSUPPS USA, LLC, a Texas limited liability company,<br><br>　　　　　　　Defendant. | Case No.: 3:22-cv-01784-BEN-MSB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 16]** |

　　　Plaintiff Jacob Scheibe ("Plaintiff") brings his First Amended Complaint ("FAC") against Defendant ProSupps, USA LLC ("Defendant") based on alleged misrepresentations of the carbohydrate and caloric content of one of Defendant's products.  *See* FAC, ECF No. 14.  The First Amended Complaint lists six claims for relief, alleged under California's Unfair Competition Laws (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), and unjust enrichment.  *Id*. ¶¶ 61-109.

　　　Before the Court is Defendant's Motion to Dismiss the First Amended Complaint. ECF No. 16 (the "Motion").  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of

Civil Procedure.  ECF No. 19.  After considering the papers submitted and applicable law, the Court GRANTS Defendant's Motion.

## I.     Background

On August 15, 2022, Plaintiff purchased Hydro BCAA powder ("the Product"), a dietary supplement product manufactured by Defendants.  ECF No. 14, ¶¶ 1, 4.  The label for the Product lists "0" calories and "0g" carbohydrates per serving.  *Id*. ¶ 19.  However, Plaintiff alleges reputable, independent third-party laboratory testing revealed that the Product actually contains 5.68 grams of carbohydrates per serving, as well as a total of 51 calories per serving.  *Id*.  ¶¶ 21, 25.

## II.    Legal Standards

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable, plausible claim.  *See Balistreri v. Pacific Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1990).  A complaint may survive a motion to dismiss only if, taking all well pled factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A motion to dismiss tests the "legal sufficiency" of the complaint.  *Ileto v. Glock Inc*., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

Where a motion to dismiss is granted, leave to amend should be liberally allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

//

### III. Discussion

Defendant argues Plaintiff's claims are pre-empted because Plaintiff seeks to impose labeling requirements which are different than those expressly authorized by the Food and Drug Administration ("FDA").[1]

The FDA comprehensively regulates dietary supplement labeling, including the quantitative amounts of nutrients listed on a supplement's label, pursuant to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*, as amended by the Nutrition Labeling and Education Act ("NLEA"), P.L. 101-535, 104 Stat. 2353. "The FDCA, as amended by the NLEA, contains an express preemption provision making clear that state laws imposing labeling requirements not identical to FDA mandates are preempted." *Gallagher v. Bayer AG*, 2015 WL 1056480 at *4; *see also* 21 U.S.C. § 343-1(a)(4)-(5).

The FDA sets forth a "12-sample" method of testing products for quantitative nutrient content, which includes carbohydrates. *See* 21 C.F.R. § 101.9(g)(2) ("a composite of 12 sub-samples (consumer units), taken from 1 each of 12 different randomly chosen shipping cases, to be representative of a lot…") This section is slightly modified for dietary supplements, where a composite sample may be either 12 sub-samples provided for in the previous section, or "10 percent of the packages in the same inspection lot, whichever is smaller, randomly selected to be representative of the lot." 21 C.F.R. § 101.36(f)(1).

Defendant argues that Plaintiff's state law claims are preempted because Plaintiff did not plead that he followed the testing protocol mandated by the FDA. Defendant cites to several district court cases finding the same, one of which is a decision issued from this Court. *See Salazar v. Honest Tea, Inc.*, 74 F.Supp.3d 1304, 1313 (E.D. Cal.

---

[1] Defendant also argues Plaintiff lacks standing to seek injunctive relief and improperly pleads unjust enrichment as a cause of action. However, as the Court finds Defendant's first argument sufficient for the Motion, the other two arguments are not discussed in this Order.

2014) (dismissing complaint because plaintiff did not plead product was tested according to FDA guidelines); *Welk v. Nutraceutical Corp.*, 17-cv-02266, 2018 WL 3818033 (S.D. Cal. Aug. 10, 2018) (this Court finding same); *Rubio v. Orgain, Inc.*, EDCV 18-2237-MWF-SHKx, 2019 WL 1578379 (C.D. Cal. March 5, 2019) (same); *Forouzesh v. CVS Pharmacy, Inc.*, 18-cv-04090-ODW-AFMx, 2019 WL 652887 (C.D. Cal. Feb. 15 2019) (same).

Plaintiff responds that he need only allege sufficient facts from which the Court can *infer* the Product labeling would be inaccurate under the applicable testing protocols. Plaintiff also cites to several district court opinions supporting this argument. *See Clay v. Cytosport, Inc.*, 15-cv-165, 2015 WL 5007884 (S.D. Cal. Aug. 19 2015) (finding plaintiff's allegations regarding non-FDA compliant product testing sufficient); *Amavizca v. Nutra Manufacturing*, LLC, 20-cv-01324-RGK-MAA, 2020 WL 8837145 (same); *Lozano v. Bowmar Nutrition LLC*, 21-cv-04296-MCS-KS, 2021 WL 4459660 (C.D. Cal. Aug. 19 2021) (same); and *Murphy v. Olly Public Benefit Corp.*, 22-cv-03760-CRB, 2023 WL 210838 (N.D. Cal. Jan. 17 2023) (same).

Parties have highlighted a current intra-circuit split regarding this precise issue. Both parties acknowledge the Ninth Circuit has not weighed in; the closest discussion comes from a decision which explicitly declined to decide the issue. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 f.n.8 (9th Cir. 2018). In *Durnford*, the Ninth Circuit reviewed the dismissal of a complaint which alleged the protein content was mislabeled on a dietary supplement. *Id*. at 598. The district court had broken down plaintiff's claims into three legal theories of misrepresentation. *Id*. at 599. Relevant here was the 'protein composition' theory, which the district court ruled was preempted because the plaintiff did not allege the product was tested in accordance with the FDA's twelve-sample method. *Id*. at 603. The Ninth Circuit reversed and remanded, stating:

> "Under Durnford's theory of misbranding, whether or not there was compliance with the FDA's 12-sample testing protocol does not matter. The disputed testing protocol is a requirement…for compliance with the section of FDA regulations determining the proper means of calculating protein *content* in dietary

supplements. But Durnford's protein *composition* theory is not concerned with the total amount of protein in the Supplement; it is concerned with the source of that protein."

*Id*. at 603-04 (citations removed) (emphasis in original).

Many of the district court opinions supporting Plaintiff's reading cite to footnote eight in the *Durnford* opinion, which states:

> "We need not address whether plaintiffs are ever required to allege, at the pleading stage, that there are tests contradicting the nutrition panel that comply with the FDA's testing protocols. We note, however, that plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage."

*Id*. at 604, f.n. 8 (citation removed). This footnote is cited as tacit approval that plaintiffs do not need to allege conformity with FDA testing protocols in their complaint to survive motions to dismiss.

This Court respectfully declines to follow Plaintiff's contravening vein of authority. The reasoning for this is expressed succinctly in *Vital v. One World Company, LLC*, where plaintiffs sued on behalf of a purported class for misrepresentations of nutrient contents in coconut water. SACV 12-00314-CJC (MLGx), 2012 WL 13029487 (C.D. Cal. Nov. 30, 2012). There, the district court granted in part summary judgment for the defendant, explaining:

> "[B]y mandating that a composite be used to determine compliance, the regulation rejects the requirement that every individual product be labeled in compliance with the Food Labeling Rule…Under the § 101.9(g) methodology, it is impossible to determine whether a company is in compliance with the Food Labeling Rule by testing less than twelve products…If only eleven products are tested, a hypothetical twelfth product could raise the average nutrient content to a sufficient level."

*Id.* at *4-5. The Court agrees with the reasoning laid out in *Vital*, and finds it applicable here. As noted in *Vital*, "[a] regulation requiring each individual product or shipping case to be in compliance with the Food Labeling Rule would be much more stringent and impose a greater burden on companies." *Id.* at *4. To allow a complaint to

stand based on the testing of a single product would directly contravene the regulatory scheme the FDA has set forth.

This conclusion is supported by the Ninth Circuit's holding in *Durnford*, which was in turn affirmed in a more recent decision. *See Hollins v. Walmart Inc.*, No.21-56031, 2023 WL 3364616 (9th Cir. 2023). In *Hollins*, the Ninth Circuit ruled that plaintiff's claims were preempted because they sought to impose labeling requirements that were not identical to the applicable federal regulations. *Id.* at *6. The *Hollins* court reasoned, "[O]ur case is governed by *Durnford*'s holding that the manufacturer's method for determining the amount of protein in the supplement was authorized by regulation and therefore preempted the plaintiff's proposed state-law rule." *Id.* at 22 (*citing Durnford,* at 602). Put another way, if there are FDA regulations regarding the method of testing for compliance, or regarding other labeling requirements, plaintiffs claims must be identical to those regulations to avoid preemption. The *Durnford* plaintiff's composition theory avoided preemption because "there were no federal testing requirements on point[.]" *Hollins*, at *22 (citing *Durnford*, at 603). Here, the FDA sets forth testing requirements that are directly applicable to Plaintiff's claims, and Plaintiff's complaint pleads it tested Defendant's products using methods not identical to the FDA's methods. Plaintiff's claims are therefore preempted.

### IV.  Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss the FAC *without prejudice*. Plaintiff will have twenty-one days from the date of this order to amend his complaint.

**IT IS SO ORDERED.**

Dated: May 18, 2023

_____
HON. ROGER T. BENITEZ
United States District Judge